IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TERESA BOGGS, et al., | : | |
| Plaintiffs, | : | Case No. 2:90cv840 |
| vs. | : | JUDGE WALTER HERBERT RICE |
| DIVESTED ATOMIC CORPORATION, et al., | : : | |
| Defendants. | : | |

DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO STRIKE AND TO COMPEL COMPLIANCE WITH SCHEDULING ORDER (DOC. #274); DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION (DOC. #278); FURTHER PROCEDURES ESTABLISHED

This litigation arises out of the alleged release of radioactivity and other hazardous substances from the Portsmouth Gaseous Diffusion Plant ("Plant"), which is owned by the Department of Energy ("DOE") and located in Piketon, Ohio. The Plaintiffs bring this action on behalf of themselves and a putative class of persons who reside in the vicinity of that facility.  The Defendants, Divested Atomic Corporation, Goodyear Tire and Rubber Company and Martin Marietta Energy Systems, Inc., formerly operated the Plant.  The Plaintiffs bring this action as a "public liability action" under the Price-Anderson Act ("PAA"), as amended, 42 U.S.C. §§ 2014(hh) and 2210.   In their Amended Complaint (Doc. #4), the

Plaintiffs allege that the Defendants have engaged in a continuous course of conduct whereby they have permitted ongoing and continuous discharges of radioactive and non-radioactive, hazardous substances. The Plaintiffs set forth four substantive claims for relief under the common law of Ohio, to wit: negligence; absolute or strict liability, predicated upon engaging in abnormally dangerous or ultrahazardous activities; private nuisance and trespass. In addition, the Plaintiffs set forth a claim under § 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607.

On August 23, 2007, this Court entered its Expanded Opinion (Doc. #270), setting forth its reasoning in support of its Decision (Doc. #244) to sustain in part and overrule in part Defendants' Motion for Summary Judgment (Doc. #192). The Plaintiffs have sought partial reconsideration of the Expanded Opinion (see Doc. #278), and have requested that the Court certify this litigation as a class action. See Doc. #279. Herein, as a means of analysis, this Court initially rules on Plaintiffs' Motion for Partial Reconsideration (Doc. #278), and then establishes procedures leading to the resolution on Plaintiffs' Renewed Motion for Class Certification (Doc. #279).[1]

---

[1]The Defendants have also filed a Motion to Strike and to Compel Compliance with Scheduling Order (Doc. #274), with which they argue that the Plaintiffs' Statement of Issues (Doc. #273) failed to comply with the parties' jointly prepared Rule 26(f) Report (Doc. #271). In that Report, the parties agreed, inter alia, that
> on or before October 12, 2007 Plaintiffs will identify (a) any Plaintiffs/Class Representatives who, by reason of relocation, death, etc., will no longer serve as Plaintiffs/Class Representatives in this action, and/or any individuals who are to be substituted or added as Plaintiffs/Class Representatives; and (b) the nature and basis of the claims Plaintiffs intend to pursue in the litigation.

Doc. #271 at 1. The Defendants contend that the Plaintiffs failed to comply with those requirements with their Statement of Issues (Doc. #273). Although the

I.  Plaintiffs' Motion for Partial Reconsideration (Doc. #278)

With this motion, the Plaintiffs present six arguments in support of their request for partial reconsideration.  As a means of analysis, the Court will address those arguments in the order presented.

First, this Court held in the Expanded Opinion that the Plaintiffs' common law claims were preempted by the PAA, so that the duty of care by which the liability of the Defendants would be assessed was supplied by federal regulations. Doc. #270 at 29-33.  With their Motion for Partial Reconsideration, the Plaintiffs initially argue that this Court's holding in that regard was wrong.  See Doc. #278 at 3-9.  This Court cannot agree.  Recently, the Ninth Circuit recognized the exact opposite position from that advocated by the Plaintiffs herein:

> Every federal circuit that has considered the appropriate standard of care under the [Price-Anderson Act] has concluded that nuclear operators are not liable unless they breach federally-imposed dose limits.  See, e.g., O'Conner [v. Commonwealth Edison Co., 13 F.3d 1090, 1105 (7th Cir.), cert. denied, 512 U.S. 1222 (1995)]; In re TMI [Litigation Cases Consol. II, 940 F.2d 832, 859 (3rd Cir. 1991), cert. denied, 503 U.S. 906 (1992)]; Roberts v. Fla. Power & Light Co., 146 F.3d 1305, 1308 (11th Cir. 1998); Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir. 1997).

---

Plaintiffs' identification of the basis of the claims they intend to pursue is marginal at best, this Court will decline to order further supplementation by the Plaintiffs, given that the basis of their claims has been disclosed during the many years this lawsuit has been litigated.  In addition, the Plaintiffs have pointed out that a class is not currently certified in this litigation and have identified the individuals who are willing to serve as class representatives.  See Doc. #273 at 1.  In addition, they have identified the remaining claims in this litigation.  Id.  Accordingly, the Court overrules Defendants' Motion to Strike and to Compel Compliance with Scheduling Order (Doc. #274).  In their Statement of Issues, the Plaintiffs have erroneously identified their entitlement to medical monitoring as a form of relief they can obtain in this litigation.  Doc. #273 at 1.  On the contrary, this Court noted in its Expanded Opinion that said form of relief was not available.  See Doc. #270 at 55.

- 3 -

In re Hanford Nuclear Reservation Litigation, 521 F.3d 1028, 1047 (9th Cir. 2008).[2] See also, Id. at 1054 (holding that the PAA "is the exclusive means of compensating victims for any and all claims arising out of nuclear incidents"); Golden v. CH2M Hill Hanford Group, 528 F.3d 681, 684 (9th Cir. 2008) (noting that the PAA "preempts all state-law claims for injury resulting from nuclear incidents").

Moreover, in Smith v. Carbide and Chemicals Corp., 507 F.3d 372 (6th Cir. 2007), the decision relied upon by Plaintiffs in their motion, the Sixth Circuit did not hold to the contrary. That decision arose out of the contamination the Plaintiffs alleged to have suffered as a result of emissions from the Paducah Gaseous Diffusion Plant, a uranium enrichment plant located in McCracken County, Kentucky. In that decision, the Sixth Circuit did not even mention the Price-Anderson Act, let alone decide whether the standard of care for claims arising out of a nuclear incident is supplied by the federal regulations governing radioactive emissions. Therefore, this Court does not agree with the Plaintiffs that Smith serves as the basis for reconsidering its Expanded Opinion.

Accordingly, this Court declines to alter its conclusion that the Plaintiffs' common law claims were preempted by the PAA, so that the duty of care by which the liability of the Defendants would be assessed was supplied by federal regulations.

Second, in its Expanded Opinion, this Court also rejected the Plaintiffs' proposition that their claims were governed by ALARA, an acronym for "as low as

---

[2]That Ninth Circuit decision superseded and amended In re Hanford Nuclear Reservation Litigation, 497 F.3d 1005 (9th Cir. 2007), which the parties have cited in their memoranda.

reasonably achievable." Doc. #270 at 33-37. In their Motion for Partial Reconsideration, the Plaintiffs argue that the Court erroneously concluded that liability could not be imposed upon the Defendants for a violation of ALARA. See Doc. #278 at 9-10. However, the Plaintiffs have not cited an intervening decision in their motion, which would cast doubt on this Court's conclusion that ALARA is not an applicable standard of care. On the contrary, the only court to have addressed the issue has reached the same conclusion as has this Court. Finestone v. Florida Power and Light Co., 2008 WL 863894 (11th Cir. 2008). Accordingly, this Court once again rejects the Plaintiffs' proposition that liability can be imposed upon the Defendants if they violated ALARA.

Third, the Plaintiffs have raised a new issue in this litigation, by arguing for the first time in their Motion for Partial Reconsideration that liability can be imposed upon Defendants for violating § 13 of the Rivers and Harbors Appropriations Act of 1899 ("RHAA"), 33 U.S.C. § 407, which, broadly speaking, prohibits the discharge of refuse into any "navigable water." See Doc. #278 at 10-11. The Plaintiffs failed to raise in their Amended Complaint (Doc. #4) the contention that liability can be imposed upon the Defendants.[3] Therefore, this Court concludes that this proposition has been waived.

However, even if Plaintiffs had raised that contention, this Court would have rejected it. Courts have generally held that a private right of action is not available under § 13. See e.g., Romero-Barcelo v. Brown, 643 F.2d 835, 847-50 (1st Cir. 1981) (and cases cited therein at 848, n. 19), reversed on other grounds sub

---

[3]The Plaintiffs mentioned § 13 of the RHAA once in the Amended Complaint, alleging that it is one of a number of sources of the federal regulation of the pollutants released from the Plant. See Doc. #4 at ¶ 12.

- 5 -

nom., Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982); National Sea Clammers Ass'n v. City of New York, 616 F.2d 1222, 1232 (3d Cir. 1980), reversed on other grounds sub nom., Middlsex Cty. Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1 (1981); City of Evansville v. Kentucky Liquid Recycling, 604 F.2d 1008 (7th Cir.), cert. denied, 444 U.S. 1025 (1979); State of New York v. United States, 620 F. Supp. 374 (E.D.N.Y. 1985). See also, California v. Sierra Club, 451 U.S. 287 (1981) (no private right of action under § 10 of the RHAA). This Court agrees with those decisions and will follow them. Moreover, the Plaintiffs have not demonstrated that the prohibition in § 13 of the RHAA has been incorporated into the regulations which governed the Defendants' release of radioactivity.

In addition, the Court rejects Plaintiffs' argument that they have asserted a state law claim predicated upon a violation of § 13 of the RHAA. See Doc. #278 at 10-11. Putting aside for a moment that Plaintiffs did not set forth such a claim in their Amended Complaint, this Court concludes that such a claim is not viable. Throughout this litigation, this Court has consistently held that the PAA preempts Plaintiffs' state law claims, so that the standard of care which governs their claims, other than that under CERCLA, is supplied by the federal regulations governing radioactive emissions. Based upon the same reasoning, this Court holds that a state law claim predicated upon an alleged violation of § 13 is also preempted.

Fourth, Plaintiffs argue that federal regulatory standards do not preempt their state law claims for releases occurring before 1958.[4] Plaintiffs had not previously

---

[4] Herein, since the Plant opened in 1954, radioactivity could not have been released from it earlier than that year.

- 6 -

raised that issue in this litigation.  Assuming for present purposes that this argument has not been waived as a result, this Court rejects same.  In a lawsuit in which the Plaintiffs have asserted similar claims, this Court has concluded that the Atomic Energy Commission ("AEC") had adopted federal regulations governing radioactive emissions during the years before 1958, when it exercised its administrative discretion and incorporated by reference the codes governing such emissions promulgated by the International Commission for Radiological Protection and the National Committee on Radiation Protection and published by the National Bureau of Standards, into AEC Bulletins GM-133 and GM-SFP-3.  Stepp v. Monsanto Research Corp., 3:91cv468 at Doc. #142, p. 41.[5]  Nevertheless, as did the plaintiffs in Stepp, Plaintiffs herein rely upon In re Hanford Nuclear Reservation Litigation, supra, to support the proposition that federal regulatory standards do not preempt their state law claims for releases occurring before 1958.  The plaintiffs in In re Hanford Nuclear Reservation Litigation sought to recover for harm they had suffered as a result of contacting thyroid disease, allegedly from their exposure to I-131,[6] which had been released from the Hanford facility beginning in 1942.  The defendants argued that the District Court had erred in permitting the jury to decide whether they (defendants) were liable, rather than holding that they were entitled to summary judgment because they had complied with federal regulatory requirements concerning emissions of I-131.  The Ninth Circuit rejected

---

[5]Parenthetically, although the parties in this litigation are different from those in Stepp, counsel for the Plaintiffs herein represent the plaintiffs in that lawsuit, and counsel for the Defendants in this litigation represent the defendants therein.

[6]I-131 is a radioactive isotope of Iodine.  That isotope was a by-product to the production of plutonium at the Hanford facility.

that argument, because no such requirements had existed in the early and middle 1940's, when the emissions had occurred, writing:

> Defendants then go further, however, and argue that the district court in this case permitted the jury to substitute its view of a reasonable emission standard for a government standard. The problem with Defendants' argument is that no federal standards governing emission levels existed at the time of the I-131 emissions. Defendants try to remedy this problem by pointing to "tolerance doses" recommended and implemented by military and government scientists working on the Hanford project and ask us to equate such recommendations with federally-authorized emission levels. They are not the same.
> These tolerance doses, although established under the aegis of the United States Army, did not carry the force of law and thus cannot provide the basis for a safe harbor from liability. They amounted to no more than site-specific safety rules. The United States Army instructed the Manhattan Engineering District to set forth standard, internal operating procedures for the plutonium-production process at Hanford. The tolerance doses were part of these procedures. The Met Lab scientists calculated what they thought were the outer limits of safe exposure at the plant. These internal guidelines were, however, exactly and only what they claimed to be: internal.

521 F.3d at 1047-48. This lawsuit, in contrast, arises out of the release of radionuclides from the Plant long after the Manhattan Project had reached a conclusion and the AEC had been established. Moreover, the Ninth Circuit did not cite or discuss AEC Bulletin GM-133 and/or AEC Bulletin GM-SFP-3. Accordingly, this Court cannot conclude that the Ninth Circuit's decision casts doubt on its conclusion in Stepp that AEC Bulletins GM-133 and GM-SFP-3 constituted federal regulatory requirements.

Fifth, the Plaintiffs argue that, even if the federal regulatory requirements govern their claims, this Court erroneously concluded that evidence fails to raise a genuine issue of material fact on the question of whether the Defendants violated those standards. See Doc. #278 at 11-12. In its Expanded Opinion, this Court reached the opposite conclusion. See Doc. #270 at 37-41. Nothing in Plaintiffs'

Motion for Partial Reconsideration (Doc. #278) causes this Court to conclude that it committed error in that regard.

Sixth, in its Expanded Opinion, this Court held that the Plaintiffs could not recover under their nuisance theory, based upon diminution of property value flowing from environmental stigma. Doc. #270 at 48-55. Therein, this Court, relying upon Eller v. Koehler, 68 Ohio St. 51, 67 N.E. 89 (1903), started from the unquestioned premise that Plaintiffs could not recover under their nuisance claim, unless they had suffered a significant or substantial harm. Id. at 50. It ultimately concluded that the "diminution of property values, flowing from the public's perception that the property may be contaminated with toxic or other hazardous substances, constituted significant or substantial harm." Id. at 54. In their Motion for Partial Reconsideration (Doc. #278), the Plaintiffs do not directly challenge the Court's holding in that regard.[7] Rather, Plaintiffs argue that, in order to ascertain whether they have suffered significant or substantial harm, the average member of the community standard must be applied. Doc. #278 at 14 (citing Restatement (Second) of Torts § 821F). The behavior of the real estate market is one manner of assessing how the normal member of the community has reacted to the harm they have suffered as a result of the Defendants' release of hazardous substances from the Plant.

---

[7]Parenthetically, the Kansas Supreme Court, the only court that appears to have addressed the question since the Expanded Opinion was filed, reached the same conclusion as this Court. Smith v. Kansas Gas Service Co., 285 Kan. 33, 169 P.3d 1052 (Kan. 2007).

- 9 -

This Court is unable to agree with the Plaintiffs' request for reconsideration.[8] With this branch of their motion, Plaintiffs are attempting to reintroduce public perception as shown by the diminution of real estate values into the resolution of their nuisance claim, given that their argument ultimately rests on the premise that they can establish they have suffered significant or substantial harm, because of the diminished value of their real property. Plaintiffs have not cited authority casting doubt on the continued vitality of Ramirez v. Akzo Nobel Coatings, Inc., 153 Ohio App.3d 115, 791 N.E.2d 1031 (2003), the decision upon which this Court relied in the Expanded Opinion to reject the premise that diminution of property values, flowing from the public's perception that the property may be contaminated with toxic or other hazardous substances, constituted significant or substantial harm. In the absence of such authority, this Court is compelled to reject their argument in that regard.

Based on the foregoing, the Court overrules Plaintiffs' Motion for Partial Reconsideration (Doc. #278) in its entirety.

II. Plaintiffs' Renewed Motion for Class Certification (Doc. #279)

Neither party has requested that this Court afford them the opportunity of filing a supplemental memorandum addressing the issue of class certification, after it has ruled upon the Plaintiffs' request for reconsideration. In Stepp, however, the

---

[8]It bears emphasis that this Court held in the Expanded Opinion that the evidence did not raise a genuine issue of material fact as to whether the Defendants had violated any of the applicable federal regulations governing the emission of radionuclides from the Plant. Therefore, the Plaintiffs' nuisance claim is limited to their allegations that the Defendants released non-radioactive, hazardous substances therefrom.

plaintiffs requested that this Court delay ruling on the defendants' request to decertify that litigation, until after it had ruled upon plaintiffs' motion seeking reconsideration.  See Doc. #156 in Case No. 3:91cv468.  Accordingly, the Court hereby grants the parties 15 days from date in order to file simultaneous supplements to their memoranda addressing the issue of class certification, to reflect the Court's decision herein to overrule the Motion for Partial Reconsideration (Doc. #278).  They shall have 10 days thereafter in which to submit simultaneous reply memoranda.  This Court will then rule on the question of class certification, without further briefing or argument.  A conference call will then be convened in order to determine the viability of the extant scheduling order (Doc. #283), filed on April 23, 2008.

July 18, 2008

                                        /s/ Walter Herbert Rice
                                      WALTER HERBERT RICE, JUDGE
                                      UNITED STATES DISTRICT COURT

Copies to:

All counsel of record.
Counsel of record in Adkins v. Divested Atomic Corp., Case No. 2:98cv595.